William D. Hyslop
United States Attorney
Eastern District of Washington
Patrick J. Cashman
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone:  (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

                          Plaintiff,

            v.

JUANITA RAMIREZ,

                          Defendant.

1:19-CR-02058-SMJ-4

United States' Motions *in Limine*

Plaintiff, United States of America, by and through William D. Hyslop, United States Attorney for the Eastern District of Washington and Patrick J. Cashman, Assistant United States Attorney for the Eastern District of Washington, respectfully submits the following motions *in limine*.

## I.    Admissibility of Co-Conspirator Statements

Under Evidence Rule 801(d)(2)(E), a statement made by a co-conspirator is admissible if the government establishes by a preponderance of the evidence:  1) the existence of a conspiracy; 2) and the defendant's connection to it, and 3) that the statement was made during and in furtherance of the conspiracy.  *Bourjailly v. United States*, 483 U.S. 171, 175 (1987).  The statements themselves may help

United States' Motions *in Limine* - 1

establish their admissibility and reliability under 801(d)(2)(E).  *See Bourjaily*, 483 U.S. at 175; *see also United States v. Schmit*, 881 F.2d 608 (9th Cir. 1989).

There must be some evidence, aside from the proffered statements, of the existence of the conspiracy and the Defendant's involvement.  *United States v. Gordon*, 844 F.2d 1397, 1402 (9th Cir. 1988).  Circumstantial evidence is sufficient. *See e.g., United States v. Mason*, 658 F.2d 1263, 1269 (9th Cir. 1981) (evidence that defendant visited co-conspirator's residence just prior to time coconspirator advised he had drugs was sufficient to connect defendant to the conspiracy).  To satisfy the "furtherance" requirement, the statement must be said to "'further the common objectives of the conspiracy,' or, 'set in motion transactions that [are] an integral part of the [conspiracy].'" *United States v. Layton*, 720 F.2d 548, 555 (9th Cir. 1983); *see also United States v. Eaglin*, 571 F.2d 1069, 1083 (9th Cir. 1977) (statements made to keep a person abreast of the coconspirator's activities, to induce continued participation or to allay fears are made in furtherance of the conspiracy). The order of proof is left to the discretion of the Court, such that a co-conspirator's statements may be admitted subject to being struck for failure of independent proof of the existence of the conspiracy and the defendant's connection to it.  *United States v. Perez*, 658 F.2d 654, 658-59 (9th Cir. 1981).

The Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36, 56 (2004), has no effect on the admissibility of statements by co-conspirators in furtherance of a conspiracy.  Specifically, the Supreme Court found that the statements of co-conspirators are not made with the expectation that they will be used at trial, and therefore there is no Sixth Amendment violation by an inability of the defendant to cross-examine the co-conspirators who made the statements.  *Id.*

In the present case, the Government anticipates seeking the admission of statements made by co-Defendants Rolando Vargas "Chato", Oscar Trevino-Gomez "Grinch", and Jose Diego Salas "Shooter", an uncharged co-conspirator, made at the

United States' Motions *in Limine* - 2

time of the assault and carjacking of the victim.  Specifically the United States seeks the admission of the following statements:

- A statement made by Jose Diego Salas ("Shooter") wherein he states to the victim "they call me shooter, don't make me shoot you;"
- Statements by Rolando Vargas ("Chato")to the victim stating "you know what this is about" and to get out of the car;
- Statements by Oscar Trevino-Gomez ("Grinch") ordering the victim to get out of the car; and
- Statement by Rolando Vargas ("Chato") to M.H. that the victim's vehicle was almost out of gas and they were leaving but would come back;

## II. Limit the Defense from Offering Good Character or Character for Truthfulness evidence until after the Defendant testifies

Rule 608 of the Federal Rules of Evidence permits opinion and reputation evidence of the character of a witness after the reputation of that witness has been attacked.  In *United States v. Dring*, 930 F.2d 687, 690-91, (9th Cir. 1991), *cert. denied*, 506 U.S. 836 (1992), the Ninth Circuit explained that:

> The purpose of Rule 608(a)(2) is to encourage direct attacks on a witness's veracity in the instant case and to discourage peripheral attacks on a witness's general character for truthfulness.  To this end, the Rule prohibits rehabilitation by character evidence of truthfulness after direct attacks on a witness's veracity in the instant case. However, the Rule permits rehabilitation after indirect attacks on a witness's general character for truthfulness.

Thus, until the Defendant testifies, the Court will not be able to determine whether the Defendant's reputation has been attacked.  Therefore any testimony designed to bolster the Defendant's character as to truthfulness is inadmissible until after the Defendant has testified.

United States' Motions *in Limine* - 3

### III.   Exclude Impermissible Evidence of the Defendant's Character

Neither defendant's character nor any trait of defendant's character is an essential element of the crimes charged in the indictment.  Thus, the defense may not introduce any evidence of specific instances of conduct (e.g. awards, commendations, lack of previous charges) that would reflect favorably on defendant.  *United States v. Solomon*, 686 F.2d 863, 873-74 (11th Cir. 1982) (disallowing, *inter alia*, questions re: family and military service).

In the event that defendants attempt to call character witnesses to testify on their behalf, the following rules apply.  The Supreme Court has recognized that character evidence -- particularly cumulative character evidence -- has weak probative value and great potential to confuse the issues and prejudice the jury. *Michelson v. United States*, 335 U.S. 469, 480, 486 (1948).  The Court has thus given trial courts wide discretion to limit the presentation of character evidence.  *Id.* at 486.

Rule 404(a) of the Federal Rules of Evidence governs the admissibility of character evidence.  Rule 404(a) permits a defendant to introduce evidence of a "pertinent" trait of character.  Because the charge here carjacking, which does not have as an element a character trait, the only "pertinent" traits of character in this case are defendant's credibility and status as a law-abiding citizen.

For example, evidence of defendant's family or employment status is irrelevant to whether defendant is believable and to whether defendant is law-abiding, and thus inadmissible.  *See United States v. Santana-Camacho*, 931 F.2d 966, 967-68 (1st Cir. 1991) (testimony of defendant's daughter purportedly showing that defendant was a good family man was inadmissible character evidence inasmuch as such character traits were not pertinent to charged crime of illegally bringing aliens into the United States).

United States' Motions *in Limine* - 4

Moreover, the <u>form</u> of the proffered evidence must be proper. Federal Rule of Evidence 405(a) sets forth the sole methods by which character evidence may be introduced. It specifically states that where evidence of a character trait is admissible, proof may be made in two ways: (1) by testimony as to reputation; and (2) by testimony as to opinion. Thus, defendant may not introduce specific instances of his good conduct through the testimony of others. *Michelson*, 335 U.S. at 477 ("The witness may not testify about defendant's specific acts or courses of conduct or his possession of a particular disposition or of benign mental and moral traits").

On cross-examination of defendant's character witnesses, the government may inquire into specific instances of defendant's past conduct relevant to the character trait at issue. Fed. R. Evid. 405(a); *Michelson*, 335 U.S. at 479. The only prerequisite is that there be a good faith basis that the incidents inquired about be relevant to the character trait at issue. *United States v. McCollom*, 664 F.2d 56, 58 (5th Cir. 1981), *cert. denied*, 456 U.S. 934 (1982).

Prior consistent statements are admissible to rebut a charge of recent fabrication, improper influence, or motive. Fed. R. Evid. 801(d)(1)(B); *United States v. Stuart*, 718 F.2d 931, 934 (9th Cir. 1983).

Unlike character witnesses, who must restrict their testimony to opinion or appraisal of a defendant's reputation, a defendant-witness may cite specific instances of conduct as proof that he possessed a relevant character trait. *United States v. Giese*, 597 F.2d 1170, 1190 (9th Cir.), *cert. denied*, 444 U.S. 979 (1979). However, "[o]nce a witness (especially a defendant-witness) testifies as to any specific fact on direct testimony, the trial judge has broad discretion to admit extrinsic evidence tending to contradict the specific statement, even if such statement concerns a collateral matter in the case." *Id.* (citation omitted). Thus, if defendant testifies to

United States' Motions *in Limine* - 5

specific instances of conduct supportive of good character, he opens the door to rebuttal evidence on all reasonably related matters, be they "collateral" or not. *Id.*

However, should the Defendant present character evidence, Fed. R. Evid. 405(a) permits cross-examination of Defendant's character witnesses, including inquiry into the witnesses' knowledge of relevant specific instances of the defendant's past history. Fed. R. Evid. 405(a); *Michelson v. United States*, 335 U.S. at 482-87.

## IV. Exclude Impermissible Evidence Attacking Character of Victim

The Defendant has not provided notice of an intent to offer evidence pursuant to Fed. R. Evid. 404(b) as it pertains to the victim in this case. Therefore a detailed motion in *limine* is constrained. The United States reserves the opportunity to object should the Defendant provide notice in future pleadings.

In order for evidence to be introduced pursuant to Rule 404(b), the evidence must (1) tend to prove a material point in issue; (2) not be too remote in time; (3) be proven with sufficient evidence to show that the act was committed; and (4) if admitted to prove intent, be similar to the offense charged. *See United States v. Danielson*, 325 F.3d 1054, 1075 (9th Cir. 2003).

Even if "other acts" evidence is relevant and admissible under Rule 404(b), the court has the power to exclude the evidence under Fed. R. Evid. 403 if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury. In this case, all of the dangers Fed. R. Evid. concerns itself with are present. The trial would become a mini trial as to the various alleged bad acts of J.G. for which he may or may not have been prosecuted.

//

//

//

//

//

United States' Motions *in Limine* - 6

**V.    Defendant should disclose any impeachment evidence against law enforcement they intend to utilize at trial.**

A motion *in limine* may be used to exclude inadmissible or prejudicial evidence before it is offered at trial as it "serves to avoid the futile attempt of 'unring[ing[ the bell' when jurors have seen or heard inadmissible evidence, even when stricken from the record." *Crane-Mcnab v. County of Merced*, 2011 WL 94424 *1 (E.D. Cal. Jan. 11, 2011) (citing *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984) and *Brodit v. Cambra*, 350 F.3d 985, 1004-05 (9th Cir. 2003)).  Additionally, "[m]otions in limine may [ ] serve to save time by ruling on evidentiary disputes in advance, minimizing side-bar conferences and other disruptions at trial and potentially obviating the need to call certain witnesses. *Id.* (citing *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002)).

Based on the purpose of motions *in limine* and the benefits of the Court deciding evidentiary disputes prior to trial, the United States respectfully requests the Court instruct defense counsel to disclose any impeachment material obtained through sources other than the United States, including but not limited to newspapers and/or internet postings, that they intend to use with the anticipated law enforcement witnesses so the Court can rule on the admissibility of that evidence prior to its introduction in front of the jury at trial.  The United States submits it is most appropriate to deal with this type of potential evidentiary dispute outside the presence of the jury and before the proverbial bell has been rung.

**VI.    Preclude the improper use of FBI 302 by the Defense.**

In order to provide for full and fair cross-examination, the Jencks Act requires that after a witness for the United States testifies on direct examination, the government must provide the defense with any statements made by the witness that relates to the subject of his or her testimony.  18 U.S.C. § 3500.  A statement within the meaning of the Jencks Act is defined as "a written statement made by said witness

United States' Motions *in Limine* - 7

and signed or otherwise adopted or approved by him', a recording or transcript that "is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously"; or a statement made by a witness to the grand jury.  18 U.S.C. § 3500(e).

In *Palermo v. United States*, the Supreme Court held that because the Jencks Act is meant to restrict the defendant's use of discoverable statements to impeachment, 360 U.S. 343, 349 (1959), "only those statements which could properly be called the witness' own words should be made available to the defense." *Id.* at 352.  The Court went on to elaborate that "summaries of an oral statement which evidence substantial selection of material" or "statements which contain [an] agent's interpretations or impressions" are "not to be produced." *Id*. at 352-53.

Consistent with *Palermo*, FBI 302s are not discoverable under the Jencks Act because they are not statements of the witness within the meaning of the statute.[1] Unless the witnesses have reviewed and adopted the FBI 302s – which was not the practice in this case – the 302s are not statements of the witness under subsection (e)(1) of the Jencks Act.  Moreover, because the 302s are written after interviews are completed and reflect the thought processes and interpretations of the agent, they do not constitute a contemporary and substantially verbatim recital of the witness's statement under subsection (e)(2).

Every circuit court to address the question has held that FBI 302s generally are not discoverable under the Jencks Act.  *United States v. Price*, 542 F.3d 617, 621 (8th Cir. 2008) (holding that absent evidence that the witnesses "approved or adopted" the FBI 302s, "these documents are not discoverable under…the Jencks Act"); *United*

---

[1] Of course, the FBI 302 would be discoverable under the Jencks Act as a statement of the agent, if the agent who prepared it is called as a witness to testify regarding the subject matter contained in the report.

United States' Motions *in Limine* - 8

*States v. Jordan*, 316 F.3d 1215, 1255 (11th Cir. 2003) (holding that FBI 302s "are not Jencks Act statements of the witness unless they are substantially verbatim and were contemporaneously recorded, or were signed or otherwise ratified by the witness");  *United States v. Donato*, 99 F.3d 426, 433 (D.C. Cir. 1996) ("[T]he agent's notes and 302 report…are not covered by the Jencks Act."); *United States v. Roseboro*, 87 F.3d 642, 646 (4th Cir. 1996) ("[T]he district court's finding that the FBI 302 Report was not a Jencks Act statement is not clearly erroneous."); *United States v. Farley*, 2 F.3d 645, 654-55 (6th Cir. 1993) (holding that because there was "no proof that the statement was adopted or approved…it was not clearly erroneous…to deny defendants access to the FBI 302"); *United States v. Williams*, 998 F.2d 258, 269 (5th Cir. 1993) ("We hold that the FBI Forms 302 were not discoverable statements under the Jencks Act."); *United Staes v. Morris*, 957 F.2d 1391, 1402 (7th Cir. 1992) ("[T]he documents are not statements producible under the Jencks Act because they were neither signed nor adopted…and further because they are not a verbatim recital…but rather only an agent's summary."); *United States v. Foley*, 871 F.2d 235, 239 (1st Cir. 1989) ("It is plain that the 302s are not substantially verbatim recitals…and recorded contemporaneously."); *United States v. Claiborne*, 765 F.2d 784, 801 (9th Cir. 1985) (because "the summaries represent…the *agents'* selection of certain information…the district court properly characterized the summaries as non-Jencks Act material"), *abrogated on other grounds by Ross v. Oklahoma*, 487 U.S. 81 (1988).

Although production of the FBI 302s was not required, in this case the United States has provided discovery, including 302s for the United States' witnesses at trial. In this circumstance, the defense should be limited to using those 302s consistent with the law and rules of evidence.  In particular, the defense must be precluded from introducing the contents of the 302s to impeach witnesses on the basis of inconsistent statements because the 302s are not the statements of the witnesses themselves.

Moreover, they must be precluded from publishing the contents of the 302s to the jury, or otherwise suggesting to the jury that the 302 is a statement of the witness. To allow otherwise would subvert the meaning of the Jencks Act and the Supreme Court's decision in *Palermo* holding that it would "be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations." 360 U.S. at 350.

The defense is, of course, free to ask a witness whether he or she made a statement that is reflected in an FBI 302.[2] However, if the defense is not satisfied with the witness's answer, the defense may not publish or introduce the contents of the 302 as a prior inconsistent statement. *See United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005) (holding that "such documents [FBI 302s] have been deemed inadmissible for impeaching witnesses on cross-examination"), *abrogated on other grounds by United States v. Booker*, 543 U.S. 222 (2005); *United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980) (holding that because "the written statement of the FBI agent was not attributable to [the witness]" it was "properly rejected as a prior inconsistent statement"); *United States v. Hill*, 526 F.2d 1019, 1026 (10th Cir. 1975) (upholding the trial court's decision to "not allow counsel to use the 302 statement to impeach a witness because the witness did not prepare or sign the document and probably never adopted it").

Moreover, the defense may not use the 302 in a way that suggests to the jury that the 302 is a statement of the witness. *See United States v. Marks*, 816 F.2d 1207,

---

[2] Likewise, in the appropriate circumstances and with the proper foundation, the defense may attempt to refresh the witness's recollection by showing the witness the 302, but only if the defense does so in a manner that does not imply that the 302 is the witness's own statement.

United States' Motions *in Limine* - 10

1210-11 (7th Cir. 1987) (holding that where defense counsel read from a 302 during cross-examination in a way that would "seem authoritative" and potentially confuse the jury, the judge was entitled to require the witness be shown the 302 and given the opportunity to adopt or reject it as a statement, although such a practice was no longer required by the federal rules of evidence).

## VII. Request for reciprocal discovery.

When the defense has requested discovery from the United States, Fed. R. Crim. P. 16(b) and other provisions of the Federal Rules of Criminal Procedure impose on the defendant a reciprocal duty to produce discovery. "Absent notice to the government to the contrary, it is presumed the defendant requests discovery pursuant to Fed. R. Crim. P. 16(a)." Local Crim. R. 16. Rule 16(b)(1)(A) mirrors Rule 16(a)(1)(E), which defines the United States' discovery obligations. It provides:

> If a defendant requests disclosure under Rule 16(a)(1)(E) and the government complies, then the defendant must permit the government, upon request, to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items if:
>
> (i) the item is within the defendant's possession, custody, or control; and
>
> (ii) the defendant intends to use the item in the defendant's case-in-chief at trial.

Fed. R. Crim. P. 16 (b)(1)(A). Similar provisions require the production of the results or reports of any physical, mental or scientific test, Fed. R. Crim. P. 16(b)(1)(B), and any anticipated expert testimony. Fed. R. Crim. P. 16(b)(1)(C).

Prior statements of defense witnesses are also required under the rule. Per Rule 26.2, the defendant's disclosure obligations parallel the United States' obligations under the Jencks Act. *See* Fed. R. Crim. P. 26.2 Advisory Committee notes ("The rule

United States' Motions *in Limine* - 11

... is designed to place the disclosure of prior relevant statements of a defense witness in the possession of the defense on the same legal footing as is the disclosure of prior statements of prosecution witnesses in the hands of the government under the Jencks Act, 18 U.S.C. § 3500 ...").

To date, Defendant has not provided notice of any witness statement or report. Consequently, the United States seeks an Order compelling the immediate disclosure of reciprocal discovery under Rule 16 and prior statements under Rule 26.2.

**VIII.  Notice of Alibi**

Pursuant to Fed. R. Crim. P. 12.1(a)(1), the United States requests the Defendant provide notice of an alibi defense pertaining to the events of July 31, 2019, between the hours of 12:01a.m. and 7:00a.m., in the area of 151 and 171 N. Outlook Road, Outlook, Washington.

**IX.    Exclusion of Defense Expert Witnesses**

To date the United States has not received notice or discovery pertaining to a defense expert witness. Pursuant to Fed. R. Crim. P. 16(b)(1)(C)(i), the defendant must give the United States written notice and summary of any expert testimony when the Defendant has made a similar request pursuant to Fed. R. Crim. P. 16(a)(1)(G).

DATED January 26, 2021.

William D. Hyslop
United States Attorney

*s/Patrick J. Cashman*
Patrick J. Cashman
Assistant United States Attorney

United States' Motions *in Limine* - 12

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Richard Smith

*s/Patrick J. Cashman*
Patrick J. Cashman
Assistant United States Attorney

United States' Motions *in Limine* - 13